# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| STEPHEN R MAYES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 1:20-cv-00057 ) |
| DR. ELAINE RODELA, *et al.*, | ) JUDGE CAMPBELL ) MAGISTRATE JUDGE HOLMES |
| Defendants. | ) |

## MEMORANDUM

Stephen R. Mayes, an inmate of the South Central Correctional Facility in Clifton, Tennessee, has filed a pro se complaint under 42 U.S.C. § 1983 against Dr. Elaine Rodela, Dr. Keith Ivens, and Warden Grady Perry (Doc. No. 1). Plaintiff also has filed an application to proceed in forma pauperis (Doc. No. 2), a motion to amend/correct (Doc. No. 4), and a motion for a temporary restraining order (Doc. No. 5).

### I. MOTION TO AMEND

Subsequent to filing his complaint, Plaintiff filed a motion to amend his complaint. (Doc. No. 4). No Defendant had been served at that time, and no Defendant has been served to date. Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, Plaintiff's motion to amend is proper, and the motion will be granted.

### II. APPLICATION TO PROCEED IN FORMA PAUPERIS

The Prison Litigation Reform Act (PLRA) provides the following under Section 1915(g) with respect to prisoner-plaintiffs:

1

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). In other words, a prisoner-plaintiff who falls within the scope of Section 1915(g) because of three or more previous "strikes" must be pay the entire filing fee at the outset of the case, unless he or she is under imminent danger of serious physical injury. *Wilson v. Yaklich*, 148 F.3d 596, 603-04 (6th Cir. 1998), *cert. denied*, 525 U.S. 1139 (1999). The PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress put into place economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* The Sixth Circuit has upheld the constitutionality of the "three strikes" rule against arguments that it violates equal protection, the right of access to the courts, due process, and that it constitutes a bill of attainder as *ex post facto* legislation. *Wilson*, 148 F.3d at 604-06.

Plaintiff is subject to the "three-strikes" provision of 28 U.S.C. § 1915(g) because he has, on at least three prior occasions, filed a civil action or an appeal that was dismissed as frivolous, malicious, or for failure to state a claim. These cases are: *Mayes v. Lindamood*, No. 1:18-cv-00036 (M.D. Tenn.) (dismissed for failure to state claim on September 18, 2018) (Doc. No. 21); (2) *Mayes v. Heather Banks*, No. 1:19-cv-00001 (M.D. Tenn.) (dismissed for failure to state a claim on February 7, 2019) (Doc. No. 9); (3) *Mayes v. Sehorn*, No. 3:17-cv-01326 (M.D. Tenn.) (dismissed for failure to state a claim on November 22, 2017 ) (Doc. No. 11). Given Plaintiff's prior litigation

history,[1] pursuant to Section 1915(g) of the PLRA, Plaintiff may pursue the instant action as a pauper *only* if he is under imminent danger of serious physical injury.

The complaint alleges that "all Defendants were deliberately indifferent to [Plaintiff's] serious medical need" (Doc. No. 1 at 6) "by not transferring [Plaintiff] to a facility that can give [him] access to and provide the appropriate care [he] need[s] to survive to be released in May 2026." (*Id*. at 8-9). Plaintiff suffers from several medical conditions, including hypertension, diabetes type II, heart disease, heart failure, prior heart attacks, hyperlipidemia, depression, and anxiety. (*Id*. at 7). Plaintiff takes a variety of medications for these conditions. (*Id*.) The complaint also alleges that, since being at South Central Correctional Facility, Plaintiff suffered a heart attack "that went untreated" which caused his "ejection fraction"[2] to be 37%; if his "ejection fraction" goes below 35%, Plaintiff will need to wear an external defibrillator or receive an implanted defibrillator "because of the higher risk of going into cardiac arrest." (*Id*. at 8).

After learning of his "ejection fraction" number, Plaintiff requested a transfer to the Lois DeBerry Special Needs Facility in Nashville, Tennessee, where he believes he will receive better care for his heart condition. (*Id*.) Specifically, Plaintiff alleges that CoreCivic, which operates the South Central Correctional Facility, "contracts all medical care out to local providers creating undue delay"; "[t]ransferring [him] to Special Needs would reduce cost to the State by being at a facility that has a cardiologist"; and Plaintiff would gain "access to Specialty care without having

---

[1] The Court notes that, in his complaint, Plaintiff freely discloses his previous litigation including *Mayes v. Brown*, No. 1:19-cv-00061, which Plaintiff states "is still pending waiting on discovery." (Doc. No. 1 at 2). However, final judgment was entered in Case No. 1:19-cv-00061 after the Court adopted the Report and Recommendation of the Magistrate Judge to grant Defendant's motion for summary judgment. (Doc. No. 40). The Court will direct the Clerk to mail a copy of the docket in Case No. 1:19-cv-00061 for Plaintiff's convenience.

[2] "Ejection fraction is a measurement of the percentage of blood leaving your heart each time it contracts." https://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286 (last visited January 7, 2021).

to leave the facility" and by "being within a few miles from hospitals that can provide emergency cardiac care and intervention." (*Id*. at 8).

The complaint further alleges that Plaintiff was promised a consultation with an outside cardiologist in February 2020, but that appointment was delayed due to the onset of the global pandemic. In June 2020, Plaintiff learned that "certain" inmates would be taken to outside medical appointments with the understanding that they would quarantine for a period of fourteen-days thereafter and, on August 4, 2020, "APN Dean" told Plaintiff she would make an outside cardiologist appointment "happen" for him. (*Id*.at 6). However, shortly thereafter, Plaintiff began exhibiting symptoms of COVID-19. (*Id*. at 6-7). The complaint alleges that, as of September 2, 2020, "over 95% of the inmates in [Plaintiff's] housing until tested positive for COVID-19 including [Plaintiff]." (*Id*. at 9). In Plaintiff's motion to amend, he alleges that, as of October 17, 2020, he still had not been taken to see the outside cardiologist. (Doc. No. 4).

To fall within the statutory exception to the "three-strikes" rule, a prisoner must allege that the threat or prison condition is "real and proximate" and that the danger of serious physical injury exists at the time the complaint is filed. *See Rittner v. Kinder*, 290 F. App'x 796, 797-98 (6th Cir. 2008) (citation omitted). Under this standard, a plaintiff must "allege[] facts from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [he] was under an existing danger" when he filed the complaint. *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (internal quotation marks and citation omitted). To support a finding of sufficiently imminent danger, "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Id.* (citing *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008)). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. (citations

4

omitted). In making this determination, the court must construe the complaint liberally, as "the imminent danger exception is essentially a pleading requirement subject to the ordinary principles of notice pleading." *Id.* Still, a plaintiff's allegations "must not be irrational, incredible, or speculative, and must describe with sufficient detail why [he] is in imminent danger." *Lapine v. Waino*, No. 17-1636, 2018 WL 6264565, at *2 (6th Cir. Oct. 11, 2018) (citing *Vandiver*, 727 F.3d at 585).

In an unpublished opinion, the Sixth Circuit has held that "[f]ailure to receive adequate treatment for potentially life-threatening illnesses . . . clearly constitutes 'imminent danger' under the [PLRA]." *Vandiver v. Vasbinder*, 416 F. App'x 560, 562–63 (6th Cir. 2011) (citing *Ibrahim v. District of Columbia*, 463 F.3d 3, 6–7 (D.C. Cir. 2006) (holding that "failure to provide adequate treatment for Hepatitis C, a chronic and potentially fatal disease, constitutes 'imminent danger'")). In a later, published opinion in a case filed by the same plaintiff, the Court reaffirmed that "a plaintiff who alleges a danger of serious harm due to a failure to treat a chronic illness or condition satisfies the imminent-danger exception under § 1915(g)." *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 587 (6th Cir. 2013). The Sixth Circuit explained:

> [A] plaintiff who alleges a danger of serious harm due to a failure to treat a chronic illness or condition satisfies the imminent-danger exception under § 1915(g), as incremental harm that culminates in a serious physical injury may present a danger equal to harm that results from an injury that occurs all at once. We reject the notion that the inclusion of the word "imminent" in § 1915(g) allows us to grant IFP status only after a plaintiff's condition has deteriorated such that the next instance of maltreatment would result in a serious physical injury. Imposing such a restriction would ignore the progressive and worsening nature of injuries often associated with chronic illness and would result in unnecessary suffering by those afflicted with these conditions. We thus believe that for the purposes of § 1915(g), an individual afflicted with a chronic illness that left untreated would result in serious injury faces imminent danger when the illness is left untreated.

5

*Id.* at 587.

In a civil rights action filed in the Northern District of Florida, the prisoner-plaintiff had accrued at least three strikes under the PLRA and alleged that should be allowed to proceed in forma pauperis because, among other ailments, he suffered from COPD and bronchitis and, during his five-year incarceration, he had not been provided adequate medical treatment for his conditions. *Stearnsmiller v. Florida*, No. 5:09cv215/RS-EMT, 2009 WL 5067668, at *1 (N.D. Fla. Dec. 17, 2009). The court rejected the plaintiff's argument, noting that, "with regard to Plaintiff's respiratory issues, he acknowledges in one of his filings that he received 'respiratory therapy' when he was previously housed at the Reception Medical Center, which suggests that treatment for his respiratory condition is available and has been previously provided to him at that institution." *Id.* at *6 n.2.

Although the present case presents a close call, the Court finds that Plaintiff adequately alleges facts supporting an inference that he is in imminent danger of serious physical injury for purposes of the threshold inquiry required by 28 U.S.C. § 1915(g). Unlike the *Stearnsmiller* plaintiff, Plaintiff alleges that Defendants denied him <u>any</u> treatment for a heart attack he suffered while incarcerated at the South Central Correctional Facility.[3] Plaintiff continues to suffer from several heart-related conditions and, in fact, alleges that his untreated heart attack exacerbated his health troubles and put him at greater risk of needing a defibrillator. *Cf. Jones v. Clement,* No. 3:16-cv-257-PLR-CCS (E.D. Tenn. Feb. 22, 2017) (finding that plaintiff had "sufficiently alleged

---

[3] To be clear, the Court does *not* find that Plaintiff establishes he is under imminent danger of serious physical injury because he alleges that he expects to receive better care at DeBerry Special Needs Facility. In the Court's opinion, such an allegation would be insufficient to meet the imminent danger threshold because an inmate does not have a protected right to be assigned to a particular prison. *See Sanford v. Armour*, No. 19-1270-JDT-CGC, 2020 WL 4369452, at *10 (W.D. Tenn. July 30, 2020) (citing *Olim v. Wakinekona*, 461 U.S. 238 (1983)).

that he faced imminent danger of serious physical injury" due to allegations that prison doctors failed to adequately treat him for pain related to his Crohn's disease, a chronic illness); *Patterson v. Corrs. Corp. of Am.*, No. 1:16-cv-0005, 2016 WL 540710, at *3 (M.D. Tenn. Feb. 11, 2016) (Sharp, J.) (holding that plaintiff's allegation that defendants failed to provide any medical treatment for inmate's diagnosed broken toe and that inmate has continuing severe pain and numbness in his toe as well as continuing leg and back pain supports an inference that plaintiff is in imminent danger of serious physical injury); *Freeman v. Collins*, No. 2:08-cv-71, 2011 WL 1397594, at *6 (S.D. Ohio April 12, 2011) (holding that the failure to treat allegedly severe chronic pain may satisfy the imminent danger requirement under specific circumstances); *Perez v. Sullivan*, 2005 WL 3434395, at *2 (W.D. Wis. Dec. 13, 2005) (same). *See also Cruse v. Corr. Med. Assocs.*, 1:16CV68-LG-RHW, 2016 WL 7477554, at *2 (S.D. Miss. Dec. 29, 2016) (finding that prisoner with COPD had not alleged imminent danger of serious physical injury where prisoner alleged he was being "overmedicated with Ibruprofen" but simply disagreed with the course of his treatment; prisoner also alleged the jail where he was housed was "unsafe" because "the ceiling is embedded with black mold in which [sic] is very dangerous to Plaintiff because [of] his chronic C.O.P.D. disease" but court found "there is nothing in the record which shows that the exacerbation [of his COPD] was related to mold or other alleged conditions at the jail.").

Further, Plaintiff alleges that he has contracted COVID-19, his pre-existing conditions put him at greater risk of COVID-19 complications, and "95%" of the inmates in his unit likewise have tested positive. *See Cage v. Tenn. Dep't of Corr.*, No. 3:20-cv-00792 (M.D. Tenn. Sept. 30, 2020) (Doc. No. 4 at 2) (denying prisoner-plaintiff's pauper application and finding that he had not established an exception to PLRA's three-strikes rule where his "concern that he could contract COVID-19" was "simply too speculative to satisfy the 'imminent danger' component of the

7

exception"); *Hamby v. Parker*, No. 3:20-cv-00378 (M.D. Tenn. May 27, 2020) (Doc. No. 3 at 3) (finding that prisoner-plaintiff with pre-existing conditions who was subject to PLRA's three-strikes rule had not alleged imminent danger of serious physical injury where his allegations were "based on fear of infection that is only speculative."). *Cf. United States v. White*, No. 3:17-cr-00098, 2020 WL 4530931, at *2 (M.D. Tenn. Aug. 6, 2020) (noting, in the context of compassionate release motions, that many courts "acknowledge the danger of COVID-19 from high pressure can be a 'serious medical or physical condition' and they further agree that inmates are unable to provide self-care to protect themselves against this life-threatening risk in a prison setting") (quoting *United States v. McConico*, No. 15-20267, 2020 WL 44311421 (E.D. Mich. July 31, 2020)). Therefore, the Court determines that Plaintiff qualifies for the imminent danger exception to the three strikes rule and will be permitted to seek pauperis status in this action.

### III. PLRA SCREENING

Having determined that Plaintiff, who has accumulated at least three strikes under 28 U.S.C. § 1915(g), successfully has demonstrated that he is under imminent danger of serious physical injury and may seek in forma pauperis status, the Court will now screen Plaintiff's pro se complaint, as amended, pursuant to the PLRA.

Under 28 U.S.C. § 1915(e)(2)(B), a court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id*. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id*. § 1915A(b).

8

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

A court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

9

**A. Section 1983 Standard**

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

**B. Alleged Facts**

The Court set forth the facts alleged in the complaint and amended complaint above when determining whether Plaintiff had established that he was under imminent danger of serious injury.

**C. Analysis**

The complaint names the following individuals as Defendants to this action in their official and individual capacities: Dr. Elaine Rodela, who Plaintiff identifies as the institutional physician at South Central Correctional Facility; Dr. Keith Ivens, who Plaintiff identifies as the medical director at South Central Correctional Facility; and Grady Perry, the Warden of the South Central Correctional Facility. (Doc. No. 1 at 6). The complaint alleges that Defendants were deliberately indifferent to Plaintiff's serious medical needs "by not transferring [Plaintiff] to a facility that can give [him] access to and provide the appropriate care [he] need[s] to survive to be released in May 2026" (Doc. No. 1 at 8-9), by failing to treat Plaintiff's heart attack; and by failing to transport Plaintiff to an outside cardiologist for care for Plaintiff's heart conditions.

Failure to provide medical care may give rise to a violation of a prisoner's rights under the Eighth Amendment. The United States Supreme Court has held that deliberate indifference to

10

serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." *Id.* (quoting *Farmer*, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

Under these standards, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. In addition, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* A prisoner's difference of opinion

11

regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *See Estelle*, 429 U.S. at 107. However, prison medical personnel may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or lack thereof or by "interfer[ing] with treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *see also Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (quoting *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (a prisoner has a cause of action for deliberate indifference if he "suffers pain needlessly when relief is readily available.")).

Here, construing the pro se Plaintiff's allegations liberally, the complaint alleges that Drs. Rodela and Ivens, the physicians responsible for monitoring and treating Plaintiff while he is an inmate of the South Central Correctional Facility, did not provide any medical care to Plaintiff when he suffered a heart attack, which exacerbated Plaintiff's health problems and put him at greater risk for future health-related medical issues. The complaint additionally alleges that Plaintiff requires medical treatment by an outside cardiologist and, despite having been promised in February 2020 that he would be transported to such appointment, Plaintiff has not been transported. In the meantime, Plaintiff has contracted COVID-19, and his many pre-existing medical conditions put him at a greater risk of virus-related complications.

For purposes of the required PLRA screening, the Court finds that the medical conditions detailed by Plaintiff, including but not limited to hypertension, diabetes type II, heart disease, heart failure, and hyperlipidemia, constitute sufficiently serious medical needs. *See Rouster*, 749 F.3d at 446. Further, the Court finds that the complaint's allegations, "if true, would show that the official[s] being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he [or she] did in fact draw the inference, and that he [or she] then disregarded that risk." *Estelle*, 429 U.S. at 103. This finding is based largely on Plaintiff's allegation that

Defendants failed to provide him with *any* treatment for a heart attack suffered while in custody and under the care of the two physicians. Consequently, for purposes of the required initial screening under the PLRA, the Court finds that the complaint sets forth non-frivolous Eighth Amendment claims under Section 1983 against Drs. Rodela and Ivens in their individual capacities based on the lack of and/or adequacy of Plaintiff's medical treatment.

The complaint also names Drs. Rodela and Ivens in their official capacities. When a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Here, the complaint alleges that Drs. Rodela and Ivens "are contract employees and [Plaintiff is] unsure of the name of the company that employs them." (Doc. No. 1 at 6). Without more information about these Defendants' employment situation and additional allegations, the Court cannot conclude that Plaintiff states colorable Section 1983 claims against Drs. Rodela and Ivens in their official capacities. However, taking into account Plaintiff's pro se status, the Court will permit Plaintiff to amend his complaint to allege claims against Dr. Rodela and Ivens' employer(s), should Plaintiff so desire.

Finally, as to Warden Perry, the complaint does not allege that he had direct participation in health care decisions regarding any particular inmate, including Plaintiff. A Section 1983 plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation, *Miller v. Calhoun Cnty.*, 408 F.3d 803, 827 n.3 (6th Cir. 2005), and Plaintiff has failed to do so with respect to Warden Perry. To the extent that Plaintiff is attempting to hold the Warden liable for the conduct of his subordinates, the complaint does not allege that Drs. Rodela and Ivens are subordinate employees of the Warden. Furthermore, even assuming the doctors are the Warden's subordinates, "[g]overnment officials may not be held liable for the unconstitutional

13

Case 1:20-cv-00057   Document 6   Filed 01/08/21   Page 13 of 18 PageID #: 70

conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676. There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a Section 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted).

There are no allegations in the complaint connecting Warden to Plaintiff's health care in any way other than the fact that he is the warden of the facility where Plaintiff is incarcerated. Consequently, the complaint fails to state Section 1983 claims upon which relief can be granted as to Defendant Warden Perry. Plaintiff's claims against Warden Perry will be dismissed.

### IV. MOTION FOR A TEMPORARY RESTRAINING ORDER

Finally, Plaintiff has filed a motion for a temporary restraining order. (Doc. No. 5). He alleges that he is the victim of retaliation for having filed this action. Specifically, Plaintiff alleges that he still has not been transported to a needed outside cardiologist appointment, he has been falsely accused of trying to introduce contraband into the facility, and C/M Bridges and Mr. McCoy told Plaintiff that he had to "go to M-Team who handles disciplinary issues, removals from the programs, etc." (*Id*. at 2). Plaintiff is "in fear" that "they" are going to remove him from the mental health program in retaliation for having filed this lawsuit. (*Id*.)

**A. Rule 65 Standard**

Federal Rule of Civil Procedure 65 governs the Court's power to grant injunctive relief, including temporary restraining orders without notice. Fed. R. Civ. P. 65(b). "The purpose of a

14

preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." *Stenberg v. Checker Oil Co.,* 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Ciavone v. McKee*, No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). Further, where "a preliminary injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive action . . . the requested relief should be denied unless the facts and law clearly favor the moving party." *Glauser-Nagy v. Med. Mut. of Ohio*, 987 F. Supp. 1002, 1011 (N.D. Ohio 1997).

In determining whether to issue a temporary restraining order or preliminary injunction under Federal Rule of Civil Procedure 65, a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *See, e.g., Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that the same four factors apply regardless of whether the injunctive relief sought is a TRO or a preliminary injunction). "These

15

Case 1:20-cv-00057   Document 6   Filed 01/08/21   Page 15 of 18 PageID #: 72

factors are not prerequisites, but are factors that are to be balanced against each other." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted).

**B. Analysis**

In this case, a careful balancing of the factors weighs against granting Plaintiff's request for emergency injunctive relief.

First, under controlling Sixth Circuit authority, the plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his action. *NAACP v. City of Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). At this point, at best Plaintiff's likelihood of success on his claims is roughly equivalent to Defendants' likelihood.[4]

With regard to the second factor, Plaintiff asks for the injunction because he believes that he is being retaliated against for filing this lawsuit and he fears that he will be removed from the mental health program. (Doc. No. 5 at 1,2). However, Plaintiff alleged that Defendants failed to transport him to the outside cardiologist appointment *prior to* having filed this lawsuit. While Plaintiff alleges that he has been wrongly accused of introducing contraband, he does not explain what consequences he has suffered, or will continue to suffer, as a result of the accusation. Likewise, Plaintiff only fears his removal from the mental health program; no such harm has come to pass, and it is unclear whether anyone is even considering the removal of Plaintiff from the mental health program.

And, while it appears that no third parties would be harmed if the preliminary injunction were issued, neither does it appear that any public interest would be served. Indeed, any relief that

---

[4] The Court notes that Plaintiff's Section 1983 claims are mostly unrelated to the allegations he raises in his motion for a temporary restraining order.

16

this Court would provide would remove from prison officials the deference that they are generally afforded in the administration and control of the prison. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988) (setting forth various public policy concerns relating to court intrusion into prison administrative matters and holding that a federal court should not "attempt to administer any portion of a state correctional system program except in the most compelling situations"); *Griffin v. Berghuis*, 563 F. App'x 411, 417–18 (6th Cir. 2014) (citing *Turner v. Safley*, 482 U.S. 78, 82 (1987)) (decisions concerning the administration of prisons are vested in prison officials in the absence of a constitutional violation, and any interference by the federal courts in that activity is necessarily disruptive).

For these reasons, Plaintiff has not borne his burden for issuance of emergency injunctive relief. Plaintiff's allegations do not clearly demonstrate the likelihood of immediate and irreparable harm before Defendants can be heard. Therefore, Plaintiff's motion (Doc. No. 5) will be denied.

The Court notes that, if Plaintiff wishes to pursue retaliation claims under Section 1983 against any named or not-yet-named defendant, Plaintiff must seek to amend his complaint to do so.

## V. CONCLUSION

In conclusion, Plaintiff, who has accumulated at least three strikes under 28 U.S.C. § 1915(g), successfully has demonstrated that he is under imminent danger of serious physical injury; thus, Plaintiff will be permitted to seek pauper status in this action.

Plaintiff's motion seeking pauper status (Doc. No. 2) will be granted. Likewise, Plaintiff's motion to amend the complaint (Doc. No. 4) will be granted.

17

Having screened the amended complaint pursuant to the PRLA, the Court finds that the complaint states colorable Eighth Amendment claims under Section 1983 against Drs. Rodela and Ivens in their individual capacities based on the denial of and/or failure to provide adequate medical treatment for Plaintiff's serious medical needs. These claims will proceed for further development. However, Plaintiff's Section 1983 claims against Warden Perry will be dismissed for failure to state a claim for which relief may be granted. Taking into account Plaintiff's pro se status, the Court will permit Plaintiff to amend his complaint to allege claims against Dr. Rodela and Ivens' employer(s), should Plaintiff so desire. As noted, if Plaintiff wishes to pursue retaliation claims under Section 1983 against any named or not-yet-named defendant, Plaintiff must seek to amend his complaint to do so.

Plaintiff's motion for a temporary restraining order (Doc. No. 5) will be denied.

An appropriate Order will be entered.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE