IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT COLUMBIA

STEPHEN R. MAYES )
)
v. ) Case No. 1:20-cv-00057
)
DR. ELAINA RODELA )

**TO:** Honorable William L. Campbell, Jr., United States District Judge

## R E P O R T   A N D   R E C O M E N D A T I O N

This prisoner civil rights action was referred to the Magistrate Judge for pretrial proceedings. *See* Order entered January 8, 2021 (Docket Entry No. 7).

Presently pending before the Court is the motion for summary judgment (Docket Entry No. 108) filed by the sole remaining Defendant, Dr. Elaina Rodela. Plaintiff opposes the motion. For the reasons set out below, the undersigned respectfully recommends that the motion be **GRANTED** and this action be **DISMISSED**.

## I. PROCEDURAL BACKGROUND

Stephen R. Mayes (Plaintiff) is an inmate of the Tennessee Department of Correction (TDOC) currently confined at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee. On September 21, 2020, he filed this *pro se* and *in forma pauperis* lawsuit under 42 U.S.C. § 1983 against SCCF Warden Grady Perry ("Perry"), SCCF Medical Director Dr. Keith Ivens ("Ivens"), and Dr. Elaina Rodela ("Rodela"), who was a physician at the SCCF at the time. *See* Complaint (Docket Entry No. 1). Plaintiff's original complaint asserted that he suffers from several medical conditions, including hypertension, diabetes type II, heart disease, heart failure, prior heart attacks, hyperlipidemia, depression, and anxiety. *Id*. at 6. Plaintiff further alleges that he was not treated for his heart conditions and that he was not taken for an

appointment that had been scheduled at some point in 2020 with a cardiologist outside the prison system.[1] *Id*. at 6-9. Plaintiff further alleges that prison official refused his requests to be transferred from the SCCF to TDOC's Lois M. DeBerry Special Needs Facility ("DSNF"), which he contends is better equipped to provide medical care to inmates suffering from serious heart conditions. *Id*. at 5. The only relief requested in the complaint is that Plaintiff be transferred to DSNF. In an amendment to his complaint filed on October 26, 2020, Plaintiff states that he still had not been taken for the scheduled appointment. *See* Docket Entry No. 4.

Upon initial review of the lawsuit pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court dismissed Defendant Perry but permitted the lawsuit to proceed against Rodela and Ivens. *See* January 8, 2021 Order (Docket Entry No. 7) and Memorandum (Docket Entry No. 6). Both Defendants were served with process.

On January 22, 2021, Plaintiff moved (Docket Entry No. 8), and was granted permission, to amend his complaint again, and he filed what the Court treated as a supplemental pleading (*see* Docket Entry No. 10 at 2) that (1) raises new allegations against Defendant Rodela based upon events that occurred after the original complaint was filed and (2) brings a claim for monetary damages against Rodela. *See* First Amended Complaint (Docket Entry No. 11). Plaintiff alleges that, on or around November 30, 2021, he was placed on suicide watch at the SCCF. *Id*. at 1. As a result, his sleeping mat was removed and he was given only smock to wear, and he was also restricted to a "finger food" diet, which he alleges consisted of four slices of bread, lunchmeat, and a piece of cake. *Id*. at 2. Plaintiff alleges that he could not eat the lunchmeat, became malnourished and dehydrated, and went into kidney failure, and that he also

---

[1] Plaintiff does not clearly state in his complaint when the outside cardiology appointment was supposed to take place.

suffered from increasingly severe rashes and sores that became infected because of having only the smock to wear and no bedding. *Id*. at 2-3. He asserts that his health declined so seriously while on suicide watch that he was transported to an outside hospital for emergency life-saving care.  *Id*. at 2-3.   Plaintiff alleges that Defendant Rodela denied his requests to be given peanut butter instead of lunchmeat, ignored his medical needs and failed to intervene despite being aware of his declining health, and delayed his transportation until the "last minute." *Id*. He alleges that other medical staff were fearful that he may die but that Rodela told a nurse that he "would get better without being sent out."   *Id*. at 3.

After Defendant Rodela filed an answer, scheduling orders were entered. *See* Docket Entry Nos. 35 and 47. By Order entered August 5, 2021 (Docket Entry No. 46), the Court granted Defendant Ivens' motion to be dismissed from the lawsuit based on a lack of allegations supporting a claim against him. The Court subsequently granted Plaintiff's renewed motion for the appointment of counsel and directed the Clerk of Court to appoint counsel to Plaintiff from the civil appointments panel. *See* Order entered November 16, 2021 (Docket Entry No. 63). Given the Court's directive that counsel be appointed, the Court stayed the pretrial deadlines in the case and denied without prejudice several motions that were then pending. *Id*.

The Clerk was unable to locate counsel to represent Plaintiff, and, after the passage of approximately 16 months while the search for counsel occurred, the Court reopened the case in order for Plaintiff to resume litigating the action *pro se*. *See* Order entered March 20, 2023 (Docket Entry No. 79). Upon the directive of the Court, the parties engaged in settlement discussions, but were unable to settle the case, and the Court then entered a new scheduling order setting out deadlines to conclude pretrial activity. *See* Order entered May 2, 2023 (Docket Entry

3

No. 81). Those deadlines have now expired. There are no motions pending the case other than the motion for summary judgment of Defendant Rodela.

## II. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Defendant Rodela seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure, contending that there are no genuine issues of material fact in dispute and that Plaintiff's claim should be dismissed as a matter of law. Defendant supports her motion with: (1) a memorandum of law (Docket Enty No. 109); (2) a statement of undisputed material facts (Docket Entry No. 110); (3) her own declaration and portions of Plaintiff's medical records attached thereto (Docket Entry No. 108-1); and (4) the declaration of SCCF grievance chairperson Melissa Strawn and grievance records attached thereto (Docket Entry No. 108-2).

Defendant raises two arguments in support of her motion. First, she argues that Plaintiff failed to exhaust his claim through the prison grievance process prior to filing his lawsuit, as is required by the Prison Litigation Reform Act of 1996 (PLRA), 42 U.S.C. ' 1997e. Defendant asserts that it is undisputed that Plaintiff, despite being aware of the grievance process and despite filing other grievances while at the SCCF, did not file a prison grievance about any of the events that form the basis for his claim against her. *See* Memorandum at 12-15. Second, Defendant argues that Plaintiff cannot set forth evidence that supports a constitutional claim against her. Defendant asserts that Plaintiff's medical records show that her medical treatment of him was appropriate and negate any conclusion that she treated him with deliberate indifference. She contends that she was not the only medical staff member who was involved in Plaintiff's medical care and that she was not responsible for scheduling or ensuring that he was taken for off-site cardiology appointments and was not involved in monitoring his diet or his physical state

4

during his suicide watch. She further contends that she had no authority to direct that Plaintiff be transferred to the DSNF. *Id*. at 15-26.

In response, Plaintiff argues that genuine issues of material fact exist. Plaintiff supports his response with a memorandum (Docket Entry No. 113), a response to Defendant's statement of undisputed material facts (Docket Entry No. 114), and with his own declaration and exhibits attached thereto (Docket Entry Nos. 115 and 115-1). Plaintiff acknowledges that he did not file a grievance about the events at issue but argues that the grievance process was not available to him because TDOC policy states that inmates may not use the grievance process to address matters concerning "institutional placement" and "diagnosis by medical professionals." He further asserts that, irrespective of his failure to file a grievance, prison officials were aware of his complaints about medical care because of letters and verbal complaints that he made to numerous prison officials. As to the merits of his claim, Plaintiff argues that there is evidence in the record that supports a conclusion that Rodela had sufficient direct and personal involvement in the events at issue to support a finding of personal liability against her.

Defendant replies that Plaintiff's arguments are not sufficiently supported by the record to raise genuine issues of material fact that require the denial of her motion. *See* Reply (Docket Entry No. 116).

### III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict

5

for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (*quoting Anderson*, 477 U.S. at 252).

## IV. ANALYSIS

Defendant Rodela is entitled to summary judgment in her favor because she raises and supports a sound and conclusive argument that Plaintiff failed to comply with the mandatory administrative exhaustion requirement of the PLRA prior to filing his lawsuit. Because the PLRA exhaustion defense requires dismissal of the lawsuit without respect to consideration of

the merits of Plaintiff's claim, it is not necessary to address Defendant's alternative argument for summary judgment that challenges the merits of Plaintiff's allegations.

Pursuant to 42 U.S.C. ' 1997e(a) of the PLRA, a prisoner asserting an action with respect to prison conditions under 42 U.S.C. ' 1983 must first exhaust all available administrative remedies before filing a lawsuit about the conditions. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). If there is a grievance procedure available to inmates, the prisoner plaintiff must present his grievance through one complete round or through all the steps of the administrative grievance procedure in order to satisfy the exhaustion requirement. *See Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *abrogated on other grounds*, *Woodford v. Ngo*, 548 U.S. 81 (2006); *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). Full exhaustion is required even if the inmate believes the grievance process is futile and will yield no relief. *See Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011). The failure of a prisoner plaintiff to satisfy the exhaustion requirement is an affirmative defense that a defendant must raise and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Once the defense of failure to exhaust is raised and supported, the prisoner plaintiff must present evidence showing that he has complied with the PLRAs requirement of exhaustion. *Napier*, 636 F.3d at 225.

Defendant Rodela sets forth evidence that TDOC Policy #501.01 (Inmate Grievance Procedures) provides for an established inmate grievance process that permits inmate to file written grievances about prison issues. *See* Declaration of Melissa Strawn (Docket Entry No. 108-2) at ¶¶ 4 and 7-11. Policy 501.01(IV)(H) defines a grievance as "a written complaint concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within

the Department or institution which personal[ly] affects the inmate complainant." *See* Docket Entry No. 108-2 at 7. Pursuant to this policy, a grievance is subject to initial review by prison officials, and a multi-level appeal process is available for grievances that are denied at any step. *See* Declaration of Strawn at ¶¶ 7-8. An explanation of the grievance procedure is further set out in the inmate handbook that is provided to TDOC inmates. *Id*. at ¶¶ 5-6. Defendant sets forth evidence that Plaintiff was familiar with the grievance process, as evidenced by seven grievances that he filed between October 7, 2019, and October 11, 2020, and that none of his grievances were either filed against her or filed about the events at issue in this lawsuit. *Id*. at ¶¶ 13-20.[2]

This evidence is sufficient to satisfy Defendant Rodela's burden of setting forth and supporting a PLRA exhaustion defense. In the face of this affirmative evidence, Plaintiff must present "significant probative evidence" in support of his rebuttal to the exhaustion defense. *See Napier*, 636 F.3d at 225.

Plaintiff acknowledges that he did not file a grievance about Rodela's conduct or about the events that form the basis of his lawsuit. *See* Plaintiff's response to statement of undisputed material facts at ¶¶ 145-146. Because the PLRA's exhaustion requirement is mandatory, *Jones*, 549 U.S. at 211, Plaintiff's only recourse to avoid the dismissal of his lawsuit for failure to exhaust under the PLRA is to show that the grievance process was not "available" to him. *Ross v. Blake*, 578 U.S. 632, 642 (2016); *Ratliff v. Graves*, 761 F.App'x 565, 567 (6th Cir. 2019) (inmate never filed a grievance and "thus his suit can proceed only if his failure to exhaust the jail's process can be excused").

---

[2] Although one of the seven grievances filed by Plaintiff involved an instance in May 2020 when Plaintiff was unable to obtain his prescribed heart medication from a prison nurse, this grievance did not name Rodela or involve the events at issue in this lawsuit. *See* Declaration of Strawn at ¶¶ 15-16.

In *Ross*, the Supreme Court clarified that there are some factual scenarios in which an inmate's attempt to use the grievance process is so compromised that the administrative remedy is made effectively "unavailable" and the failure to exhaust available remedies is therefore appropriately excused. However, these scenarios are limited. An administrative remedy is not "available" only when: (1) the grievance process "operates as a simple dead end," (2) the grievance process is "so opaque that it becomes, practically speaking, incapable of use," or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

Plaintiff's primary argument against the PLRA exhaustion defense is that neither his request to be transferred to the DSNF nor his complaints about a lack of medical care are matters that can be grieved under the language of the TDOC grievance policy. Policy #501.01(VI)(H) provides that the grievance process is inappropriate for:

> 3. Addressing classification matters such as institutional placement and custody level, which may be appealed through other avenues outlined in the #400 policy series, except where policy violations are alleged. Cell assignments not due to a classification or reclassification are grievable.
>
> 8. Diagnoses by medical professionals, medical co-payments where Policy #113.15 has ben adhered to, and requirements of substance use therapeutic programs.

Plaintiff further asserts that the grievance policy requires that grievances be filed "within seven calendar days of the occurrence or the most recent occurrences giving rise to the grievance." Policy #501.01(VI)(C)(1). Plaintiff argues that, in light of these policy provisions, the grievance process was a "simple dead end because there is no relief." *See* Plaintiff's Response at 10.[3]

---

[3] Plaintiff does not argue that either of the other scenarios set out in *Ross* rendered the TDOC grievance process unavailable to him. Additionally, although he states in his complaint "fear of retaliation" was a reason that he did not pursue a grievance, *see* Complaint at 2, he offers

9

Plaintiff points to a prisoner civil rights case from this Court, *Rucker v. Lindamood*, No. 1:16-00090, 2022 WL 610603 (M.D.Tenn. Mar. 1, 2022) (Report and Recommendation), as support for his argument, contending that the prisoner plaintiff in *Rucker* was found to have unavailable administrative remedies because of the TDOC policy provision concerning grievances about medical diagnosis.

The Court finds no merit in Plaintiff's argument because he made no attempt to use the TDOC's grievance procedure concerning the events that he now seeks to litigate as civil rights claims. "The Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Napier*, 636 F.3d at 223-24 (quoting *Braswell v. Corr. Corp. of Am.*, 2009 WL 2447614, at *7 (M.D. Tenn. Aug. 10, 2009); *Lamb v. Kendrick*, 52 F.4th 286, 293 (6th Cir. 2022); *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). Once it is shown that such efforts were made, courts analyze "whether an inmate's efforts to exhaust were sufficient under the circumstances." *Napier*, 636 F.3d at 224.

Plaintiff made no such efforts. Had he filed a grievance that was rejected by prison officials as inappropriate, then he would have firmer footing to make the argument that the grievance process was unavailable to him and a "dead end." However, because Plaintiff chose not to even pursue a grievance, it is unknown whether prison officials would have rejected his attempt to file a grievance as inappropriate and he has no basis to now assert that the grievance process was unavailable to him. The grievance process was available to Plaintiff but he chose to not use it.

---

no evidence to support this general assertion and fails to present an argument that any type of actual retaliation against him prevented him from filing a grievance.

10

Case 1:20-cv-00057   Document 117   Filed 03/13/24   Page 10 of 13 PageID #: 1425

In this regard, Plaintiff's case is significantly distinguishable from *Rucker v. Lindamood*. In *Rucker*, the prisoner plaintiff brought Eight Amendment medical care claims against prison officials. The prison officials PLRA exhaustion defense was rejected because the court found that grievance remedies were not available to the plaintiff. Unlike Plaintiff, however, the plaintiff in *Rucker* had pursued numerous grievances about his medical care prior to filing his lawsuit. Although the prison officials hearing these grievances deemed them to be inappropriate under the TDOC grievance policy, the plaintiff in *Rucker* took the affirmative step of pursuing his grievances. The court's finding that remedies were unavailable hinged upon the actual determination by prison official that the grievances were inappropriate, not upon the upon the mere language in Policy #501.01(VI)(H)(8).

The Court further notes that the grievance process itself contemplates that inmates may file grievances about some matters that are deemed non-grievable by the grievance chairperson, as shown by the provision that the inmate may appeal this initial decision. *See* Policy 501.01(VI)(H). Indeed, the May 2020 grievance filed by Plaintiff about missing medication shows that, even if a grievance is deemed inappropriate per policy at one stage of the grievance process, the grievance may nonetheless be substantively reviewed at a later stage on appeal. Grievance #27921-342145 was reviewed on the merits by the grievance chairperson at the first level and this decision was appealed by Plaintiff to the grievance committee and warden at the second level. The grievance committee and warden found the grievance to be "inappropriate per Policy 501.01 Sec. VI H-8 Medical Diagnosis." Upon Plaintiff's appeal to the third level, however, the Director of Health Services reviewed the grievance and concurred, not with the warden or grievance committee's assessment that the grievance was inappropriate, but with the supervisor's substantive response on the merits. *See* Docket Entry No. 108-2 at 54-59. *See also*

*Maher v. Tennessee*, 2020 WL 1325363, at *7 (W.D.Tenn. Mar. 20, 2020) (rejecting inmate's argument that grievance process was not available to him because grievances about medical diagnosis are deemed inappropriate under the TDOC grievance policy).

Plaintiff's argument that the grievance process was unavailable to him because a grievance must be filed within seven days of the triggering occurrence is likewise meritless. Compliance with procedural guidelines, such as deadlines, is well-accepted as a requirement of exhaustion under the PLRA. *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006); *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). A grievance procedure is not 'unavailable" simply because there is a filing deadline for grievances.

Similarly, there is no merit in Plaintiff's argument that his failure to pursue a grievance should be excused because he wrote letters to prison official and made verbal complaints about his medical care at the SCCF. *See* Plaintiff's Response at 11-12. When there is a grievance process in place, the PLRA requires use of that process. *See Shephard v. Wilkinson*, 27 F.App'x 526, 527 (6th Cir. 2001) ("While Shephard asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims."); *Jewell v. Leroux*, 20 F.App'x 375, 377 (6th Cir. 2001) (While [plaintiff] also raised informal complaints in several letters to prison authorities, he must follow the formal grievance process to properly exhaust his administrative remedies.").

In the end, because of the mandatory nature of the PLRA's exhaustion requirement and the undisputed evidence that Plaintiff failed to pursue the administrative remedies that were available to him at the SCCF, the Court must dismiss the claim against Rodela for failure to exhaust under the PLRA.

## RECOMMENDATION

Based on the foregoing, it is respectfully RECOMMENDED that the motion for summary judgment (Docket Entry No. 108) filed by Defendant Elaina Rodela be GRANTED as to Defendant's PLRA exhaustion defense and that this action be DISMISSED because of Plaintiff's failure to comply with the PLRA's exhaustion requirement.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge